EVALINE CARTER *v.* JESSE CARTER'S ADMR.
SAME *v.* N. F. CARTER'S ADMR.

[Abstract Kentucky Law Reporter, Vol. 4—718.]

**Creditors' Right in Heir's Estate.**

Land descending to the heir may be aliened by the heir and a bona fide purchaser for value will hold as against the personal representative of the heir or the creditor and the remedy is by the creditor against the heir for a recovery to the extent of assets received; and he may by a proceeding in equity obtain a lien on the property of the decedent in the hands of the heir.

**Suits to Settle Estates.**

After the death of the father, his son and heir died and the administrator of the father's estate was also appointed as administrator of the son's estate. The son was largely involved and the father was his surety for several thousand dollars. The administrator brought a suit to settle both estates and procured an order for the sale of the father's real estate to pay such obligations and others. It was held that the other heirs, being before the court, and the action having been properly instituted, the chancellor should have proceeded to ascertain the amount of the personal estate and applying that to the payment of the debts, he should then have sold enough of the real estate to pay the balance of said indebtedness and have divided the balance of the estate between the children, charging the deceased son's estate with what the father's estate had to pay for him. All this should have been done before the son's creditors received anything.

APPEALS FROM TRIGG CIRCUIT COURT.

February 6, 1883.

OPINION BY JUDGE PRYOR:

Jesse Carter died in the county of Trigg, leaving a valuable estate, and his widow and two children surviving him. Much of his estate consisted in land that descended to his children subject to the widow's dower. His son, N. F. Carter, died shortly after his father, and F. B. Carter was appointed the administrator of both father and son, and as the representative of each filed these actions in equity in the court below to settle the two estates and to determine the rights of the heirs and creditors.

As administrator of the father he alleges the insolvency of the personal estate to pay his debts and asks a sale of his realty, de-

scribing it, or so much as may be necessary for that purpose. About $6,000 of the indebtedness of Jesse Carter consisted in liabilities he had assumed as his son's surety, and this, added to his own indebtedness, required a sale of his realty.

The son's estate was insolvent, and from a confused record it appears that the appellant, Mrs. Coleman (the daughter), has lost her entire patrimony by a judgment that gives to the individual creditors of the son a part of the proceeds of the realty descended to him, upon the idea that, being vested with the title by reason of the inheritance, no distinction could be made between the debts of the son for which the father was individually liable and those upon which the son was alone bound. Land descending to the heir may be aliened by the latter, and the *bona fide* purchaser for value will hold as against the personal representative or the creditor. The remedy is by the creditor against the heir for a recovery to the extent of assets received, and the creditor may by a proceeding in equity, if asked for, obtain a lien on the property of the decedent in the hands of the heir. See Gen. Stat. (1881), Ch. 44, Art. 1, § 10.

In this case no creditor of the father or son had instituted an action for the settlement of either estate. No partition of the realty had been made, and no lien had been created by any proceeding at law or in equity in behalf of a distributee or creditor, nor did any lien exist on this realty by reason of any rule of law or equity. While both estates were in this condition the personal representative filed the petition asking for a settlement of Jesse Carter's estate and also the son's estate, and a sale of the realty to pay the father's debts. The action was instituted under the provisions of Civ. Code (1876), Ch. 3, and the two children to whom the land descended were made parties. They had not disposed of any of the realty, and no creditor of the son by any proceeding had created a lien on the estate descended to the son for the payment of the son's debts. So there was nothing to prevent the administrator from having the real estate sold to satisfy the debts due by Jesse Carter, the father. The action of the administrator was a *lis pendens* and created a lien superior to any that might, after that time, attach against the estate of Jesse Carter at the instance of the creditors of the son. The personal representative was then entitled to have the estate, real and personal, left by Jesse Carter applied to the payment of his debts.

These debts included the liabilities of the son upon which the

father, Jesse Carter, was liable as surety. The statute cited permits a creditor to create a lien upon the property descended to the heir, by proper procedure, and here the administrator has created a lien by the action brought to subject the property to the payment of the debts of the decedent. He has pursued the remedy pointed out by the statute, and none other was required to give him a lien. If the heir could alien after suit brought and creditors attach, so as to give a preference to either over the action of the personal representative in behalf of creditors, the act authorizing such a proceeding by the action would be no protection to the estate, distributees or creditors. The action having been properly instituted and the parties before the court, the chancellor should have proceeded to ascertain the amount of the personal estate, and applying that to the payment of the debts, as to the balance of the debts unsatisfied, he should have sold enough of the real estate to pay them, including the debts due by the father as his son's surety. Then he should have divided the balance of the estate between the children, charging the brother, N. F. Carter, with the sum the estate had to pay for him, and if no division could have been made in kind he should have sold the balance and divided the proceeds, charging N. F. Carter with the amount the representative or the realty had paid on his account. All this should have been done before the creditors of the son received anything. When he accounts to his sister for what the estate has paid for him then the interest remains for the payment of their debts.

Suppose the son had been living and the administrator of his father had proceeded against him instead of his creditors, could the son after the estate had been subjected to the payment of debts for which his father was liable as surety, insist upon an equal division of the estate left without regard to what had been paid for him? A negative answer must, we think, be given to such an inquiry. The chancellor has taken hold of the estate for the purpose of making a settlement, it is true, with creditors; but the heirs are before the court, and necessarily so, because they are vested with the legal title and directly interested in the result of the litigation. The sister has an equity against the brother that she may assert because her interest in the realty is affected by the sale made of it to pay his debts, and the chancellor, having complete jurisdiction over the parties and the subject matter, will proceed to adjust the equities between them.

It appears that sales have been made of the estate or portions of it to pay these debts. These sales can not be disturbed as the purchasers are not before the court, or if so we find no exceptions to any report of sale, or any appeal from the orders of confirmation. This will not interfere with a division of the proceeds in accordance with the opinion. It was error to permit the creditors of the son (his individual creditors) to share in the distribution until the debts due by the father were satisfied and the sister made equal to her brother on account of the moneys paid for him during the litigation out of the estate descending to her from her father, no lien having been created in any mode by the son's creditors in the land left by his father. The rents of the realty should also be applied to the payment of the debts of Jesse Carter from the time the chancellor took possession of the land by his commissioner for the purpose of renting it out, or from the time it was rented by the administrator (if he rented it) under the order of court. The widow, of course, was entitled to her part of the rent. ·

Judgment in each case is *reversed* and cause remanded.

*Dabney & Crenshaw, for appellant.*

*R. A. Burnett, for appellees.*

